IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

VERONICA CHAMBERLAIN,           §
Reg. No. 43441-180              §
                                §
            Petitioner,         §
v.                              §          CIVIL ACTION H-05-2614
                                §
FEDERAL BUREAU OF PRISONS,      §
                                §
            Respondent.         §

MEMORANDUM OPINION AND ORDER

Veronica Chamberlain, proceeding pro se, filed an application
for habeas corpus relief under 28 U.S.C. § 2241 (Docket Entry No.
1) challenging the Bureau of Prisons' cancellation of the Intensive
Confinement Center ("ICC") Program.[1]  Pending before the court are
Petitioner's Application for Writ of Habeas Corpus (Docket Entry
No. 1), Respondent's Answer (Docket Entry No. 4), Respondent's
Motion to Dismiss (Docket Entry No. 5), Petitioner's Motion for
Admissions (Docket Entry No. 6), Petitioner's Response to
Respondent's Motion to Dismiss (Docket Entry No. 7), Petitioner's
Motion for a Temporary Restraining Order (Docket Entry No. 8),
Petitioner's Motion for an Evidentiary Hearing (Docket Entry
No. 9), Petitioner's Motion to Compel (Docket Entry No. 10), and
Petitioner's Letter to the Court (Docket Entry No. 11).  After
carefully reviewing the pleadings and the applicable law, the court
will grant Respondent's Motion to Dismiss and deny Petitioner's

_____

[1]Also known as the Boot Camp" Program or "shock
incarceration."

Application for Writ of Habeas Corpus, Petitioner's Motion for a Temporary Restraining Order, Petitioner's Motion for an Evidentiary Hearing and Petitioner's Motion to Compel.

### I.   BACKGROUND

In August of 2003 petitioner, after pleading guilty, was sentenced by the United States District Court for the Western District of Texas to twenty-four months imprisonment for committing bank fraud in violation of 18 U.S.C. § 1344.  She is imprisoned at the Federal Prison Camp in Bryan, Texas.  The district court made the following recommendation relevant to petitioner's sentence:

(1) That the defendant be placed in an Intensive Confinement Program (Boot Camp), should she meet the eligibility criteria.  The court believes that the defendant can benefit from participation in this program.
(2) Should the defendant not qualify for the Intensive Confinement Program, the Court then recommends that the defendant be placed in a Federal Correctional Institution as close as possible to San Antonio, Texas.

Judgment in a Criminal Case, Case No. SA-05-CR-282(01), p. 2. After Petitioner was sentenced, the BOP cancelled the ICC Program without notice for budgetary reasons.  Petitioner has remained in the general prison population.

The ICC Program was authorized by Congress in 1990.  18 U.S.C. § 4046.  As part of the Crime Control Act, Congress gave authority to the Bureau of Prisons ("BOP") to create a federal boot camp program, providing that the BOP "may place in a shock incarceration program any person who is sentenced to a term of imprisonment of more than 12, but not more than 30 months, if such person consents

to that placement" Id. at § 4046(a).  Participants in the program
were to "adhere to a highly regimented schedule that provides
strict discipline, physical training, hard labor, drill, and
ceremony characteristic of military basic training."   Id. at
§ 4046(b).

    Successful completion of the ICC Program could entitle an
inmate to consideration for early release.  28 C.F.R. § 524.32.  An
inmate who successfully completed the institution-based component
of the program ordinarily would have been eligible to serve the
remainder of his sentence in a community-based program.  Id. at
§ 524.32(d).   An inmate who maintained successful participation in
the community-based program and had a period of supervised release
following his or her sentence would have been eligible for up to a
six-month reduction in that sentence.  Id.

    On January 14, 2005, the Director of the BOP issued a
memorandum stating that the BOP was terminating the ICC Program
because of budgetary constraints and because of its conclusion that
the program did not reduce recidivism.  (Motion to Dismiss, pp. 7-
8).  Petitioner filed this application for a writ of habeas corpus,
challenging the BOP's cancellation of the ICC Program.


## II.  ANALYSIS

    Claims challenging the imposition of a sentence must be
brought under 28 U.S.C. § 2255 and presented to the sentencing

judge.    Reyes-Requena v. United States, 243 F.3d 893, 900-01 (5th

Cir. 2001) ("28 U.S.C. 2255 . . . is the primary means under which

a federal prisoner may collaterally attack the legality of his

conviction or sentence").   Claims that challenge the method in

which the sentence is executed are properly brought under 28 U.S.C.

§ 2241.   Jeffers v. Chandler, 253 F.3d 827, 830 (5th Cir. 2001).

    Petitioner requests that the court "grant relief by correcting

Petitioner's sentence and imposing a sentence that would affect the

sentencing Court's original intent."   (Petition, p. 5).   To the

extent that her claim is actually for correction of her initial

sentence, her habeas corpus petition must be brought under § 2255

in the court where she was sentenced.   But however inartfully

pleaded, it is clear that petitioner's complaint is not that her

sentence was illegally imposed, but the manner in which the BOP is

carrying out her sentence.[2]   Therefore to the extent her petition

---

[2]Although courts have been somewhat inconsistent in
determining whether claims complaining of the BOP's ICC Program
cancellation are cognizable under § 2241 or § 2255, the prevailing
view seems to be that these cases are more properly brought under
§ 2241.   Several courts have dismissed petitions challenging the
BOP's cancellation of the ICC Program brought under § 2255 on the
grounds that the petitions should have been brought under § 2241.
See, e.g., United States v. Wiggins, 2005 WL 3216754 (N.D. Ill.
2005); Mendez v. United States, 2005 WL 2371979 (W.D. Tex. 2005);
United States v. Serrato, 2005 WL 1661831 (D. Or. 2005) (all
holding that petitions complaining of the BOP's cancellation of the
ICC Program should be brought under § 2241).   At least two courts
have granted relief under § 2255.   See United States v. McClean
2005 WL 2371990 (D. Or. 2005); United States v. Coleman, 2005 WL
233825 (D. Conn. 2005)(both granting § 2255 petitions because the
courts relied on the fact that the ICC Program was an option that
the petitioners would be considered for).

complains that the BOP improperly executed her sentence by cancelling the ICC Program, it is properly before this court under § 2241.   See Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000) (noting that a § 2241 petition "must be filed in the same district where the prisoner is incarcerated").   To prevail on her claim, petitioner must show that she is "in custody in violation of the Constitution of laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

Petitioner argues that the ICC Program is a sentencing benefit that would have reduced her incarceration. Petitioner claims the cancellation of the ICC Program without notice violated the notice-and-comment requirements for agency rulemaking under the Administrative Procedure Act (APA), 5 U.S.C. § 553, and the congressional mandate in the governing statute.   She also claims the cancellation violated the Due Process Clause because the court sentenced her based on misinformation.  Finally, petitioner claims that the cancellation of the ICC Program violates the *Ex Post Facto* Clause of the Constitution.  Petitioner requests that this court correct her sentence by imposing a sentence that would affect the sentencing court's original intent.

In addition to arguing against each of petitioner's substantive claims, respondent argues that the court lacks jurisdiction because: (1) petitioner failed to exhaust her administrative remedies as required by the Prison Litigation Reform

Act; (2) petitioner lacks standing to assert a challenge to the cancellation; (3) the case is moot because the ICC Program no longer exists.

## A.   Exhaustion of Administrative Remedies

Respondent argues that petitioner's application for habeas corpus should be dismissed because she failed to exhaust her administrative remedies. (Motion to Dismiss, pp. 3-5).  A federal inmate seeking relief under 28 U.S.C. § 2241 must first exhaust her administrative remedies through the BOP before seeking habeas relief in federal court.  See 42 U.S.C. § 1997e(a); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994).  Exceptions to the exhaustion requirement apply only when "the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action."  Id. (citation omitted). The petitioner bears the burden of demonstrating futility.  Id.

The BOP provides inmates a three-tiered administrative remedies process for complaints related to any aspect of confinement.  28 C.F.R. §§ 542.10-524.15.  Petitioner has failed to pursue any administrative remedies through the BOP's process but argues that any such attempt would be futile.[3]  The court agrees.

---

[3]Petitioner's Request for Admissions actually addresses futility in regard to placement in a Community Confinement Center (CCC), although her habeas claim clearly relates to the BOP's termination of the ICC Program, not the BOP's CCC policies. Request for Admissions, Docket Entry No. 6.  The court has received

The BOP has decided to end the ICC Program, and no pursuit of administrative remedies by this petitioner will alter this fact, or convince the BOP to change her sentence to account for the cancellation. The BOP has taken a clear stand in defense of cancelling the ICC Program and has consistently opposed habeas corpus relief related to that cancellation. See Fason v. Sanders, 2005 WL 2897041 at 2 (E.D. Ark. 2005)(finding that "the BOP has taken a clear, consistent, and widespread stand" against challenges to cancellation of the ICC Program).[4]

## B.    Standing

Respondent next argues that the case should be dismissed because petitioner lacks standing. Respondent argues that petitioner has no injury in fact and no legally-protected interest in being placed in the ICC Program. (Motion to Dismiss, p. 10-13)

---

similar Requests for Admissions in the past in cases that do complain of the BOP's CCC policies, and believes that petitioner adopted this document, used in the CCC habeas petitions, without appropriate modification for her ICC Program habeas petition. Because a pro se pleading is to be liberally construed, the court will disregard the surplusage in the Request for Admissions and address the petitioner's argument regarding futility of administrative exhaustion. See Estelle v. Gamble, 97 S.Ct. 285, 292 (1976)(stating that pro se complaints should be liberally construed). Petitioner more clearly states her arguments against dismissal for failure to administratively exhaust her remedies in her Response. (Response, p. 1).

[4]Petitioner has requested that the court order respondent to make certain admissions to help her prove that exhaustion would be futile. Request for Admissions, Docket Entry No. 6. The court agrees with petitioner that going through the administrative remedies process would be futile, which renders the requested admissions unnecessary.

The requirement of standing derives from Article III of the Constitution, which limits federal court jurisdiction to cases or controversies.  Lujan v. Defenders of Wildlife, 112 S.Ct. 2130, 2136 (1992).  Petitioner must establish the three components of standing, which together constitute an "irreducible constitutional minimum."  Id.  First, petitioner must have suffered an "injury in fact"—an invasion of a legally protected interest which is concrete and particularized and actual and imminent.  Id.  Second, a causal connection between the injury and the conduct complained of must exist.  Id.  Third, it must be likely rather than merely speculative that the injury will be redressed by a favorable decision.  Id.

Respondent argues first that petitioner had no legally protected interest in being placed in the ICC Program even during its existence.  The court agrees.  The Fifth Circuit has held that "[i]n the prison context, a state creates a protected liberty interest when it limits official discretion in approving or denying an inmate's request or eligibility for a prison program.  If the prison officials have wide authority and discretion, usually no liberty interest is at stake."  Welch v. Thompson, 20 F.3d 636, 639-40 (5th Cir. 1994).

The statute authorizing the ICC, 18 U.S.C. § 4046, does not provide petitioner with any right to placement in the ICC Program. 18 U.S.C. § 4046 (stating that the BOP "may place in shock

-8-

incarceration program" individuals sentenced to more than 12 but not more than 30 months if the person consents). Regulations that the BOP had in place implementing the ICC Program further emphasized the discretionary nature of prisoner placement, providing that "[p]lacement in the intensive confinement center program is to be made by Bureau staff in accordance with sound correctional judgment and the availability of Bureau resources." 28 C.F.R. § 524.31.  The BOP thus retained sole discretion to determine whether a prisoner was eligible for the ICC Program. Petitioner therefore cannot establish injury in fact to an interest that is not legally protected.

Also undermining the injury in fact leg of the standing analysis is that petitioner was not designated as eligible for the ICC Program before it was cancelled.[5]  A variety of steps occurred prior to any prisoner beginning the ICC Program.  An inmate

---

[5]To support standing, petitioner has submitted a letter from her attorney noting that she was supposed to start the ICC Program on February 14, 2004, and was to report to prison in January of 2005.  Petitioner's Letter, Docket Entry No. 11.  (The court assumes that the 2004 date is a typographical error and her attorney meant to write February 14, 2005.)  Petitioner further notes that she was assigned to FPC – Bryan specifically to participate in the Boot Camp Program.  Id.  Because this case is before the court on a Motion to Dismiss, the court takes petitioner's allegations as true.  These allegations do not, however, establish that petitioner was eligible for the ICC Program.  Although petitioner was slated for the February 14 class, she had not yet been screened, and was hence not yet eligible for the ICC Program.  Declaration of Brian K. Berg, Case Management Coordinator at the Federal Prison Camp at Bryan, Texas, attached to Respondent's Motion to Dismiss, Docket Entry No. 5.

arriving   at   the   Federal   Prison   Camp   with   the   purpose   of

participating in the ICC Program was required to submit an Inmate

Request   to   a   staff   member   advising   them   of   their   desire   to

participate.   (Motion to Dismiss, pp. 8-9).   All inmates identified

for   the   program   were   screened   prior   to   admission   to   the   ICC

Program,   which   included   screening   by   the   Psychology,   Health

Services, and ICC Unit Management Staff.   Id.   Inmates selected for

the ICC Program did not volunteer to actually participate in it

until the conclusion of the week-long orientation.   Id.

In this case petitioner was never officially screened for the

ICC program by the Psychology and Health Services departments.[6]

Instead,   petitioner   was   placed   on   the   screening   list   for   the

February 14th class and would have been screened in late January or

early February of 2005.   Petitioner has made no showing that she

would   have   been   found   eligible   for   the   ICC   Program.   Although

petitioner was not screened for the class because the BOP decided

to cancel the ICC Program, which was no fault of petitioner's, she

nonetheless   presents   too   speculative   an   injury   to   satisfy

Constitutional scrutiny.   *If* petitioner had passed the screening

portion, and *if* petitioner had decided she still wanted to enroll

after the orientation then she might have a cognizable injury.

As the Fifth Circuit recently noted in an unpublished opinion,

_____

[6]Declaration of Brian K. Berg, Case Management Coordinator at
the Federal Prison Camp at Bryan, Texas, attached to Respondent's
Motion to Dismiss, Docket Entry No. 5.

"[e]ligibility is not entitlement" and there is no guarantee that
petitioner would have completed the admittedly rigorous program had
she been deemed eligible.  See Holcombe v. Fleming, 69 Fed. Appx.
658 (5th Cir. 2003)(citation omitted).  See also 28 C.F.R.
§§ 524.30, 524.32(a) ("eligible inmate ... must .. forego
opportunities which may be otherwise available.... Opportunities
may that may be affected include, .... visitation, telephone use,
legal research time, religious practices, commissary, smoking, and
grooming preferences").  For the foregoing reasons, the court finds
that it lacks jurisdiction because petitioner does not have
standing to bring this suit under 18 U.S.C. § 2241.[7]  Even if
petitioner had established standing under the Constitution, the
court has examined her other arguments and concludes that they fail
to state a valid § 2241 claim.

**C.   The Administrative Procedures Act**

     Petitioner argues that in cancelling the ICC Program without
notice and comment, the BOP violated the Administrative Procedures
Act (APA), 5 U.S.C. § 553.  Before addressing this issue, however,

---

     [7]The court, having determined that it lacks jurisdiction
because petitioner does not have standing to bring this petition,
will not address respondent's other jurisdictional argument that
the claim is moot because the ICC Program no longer exists.
(Motion to Dismiss, pp. 13-14)  Respondent also argues generally
that petitioner "fails to state a claim upon which relief can be
granted" which seems to be an amalgam of its other arguments.
(Motion to Dismiss, pp. 5-9) Because the court addresses each of
the substantive arguments individually, it is unnecessary to
specifically address this catch-all argument.

the court must first determine if the cancellation is judicially reviewable under the APA.

Although the APA has a presumption of judicial review, it prohibits judicial review of agency decisions committed to the agency's discretion by law.  5 U.S.C. §§ 701(a)(2) & 702. The Supreme Court has held that this prohibition applies when the statute provides no meaningful standard to judge the agency's actions.  Lincoln v. Vigil, 113 S.Ct. 2024, 2031 (1993).  When Congress gives no statutory directives limiting an agency's discretion, an agency's allocation of a lump-sum appropriation is not subject to judicial review.  Id. at 2032.

Here, although Congress authorized funding for the ICC Program, it never actually appropriated specific funds for that purpose.  See 18 U.S.C. § 4046; Pub. L. No. 101-647, § 3002, 104 Stat. 4789, 4915 (1990) ("There are authorized to be appropriated for fiscal year 1990 and each fiscal year thereafter such sums as may be necessary to carry out the shock incarceration program established under the amendments made by this Act").  See also Consolidated Appropriations Act, Pub. L. No. 109-199, 118 Stat. 3, 53-55 (2004).  The ICC was funded the first year and in subsequent years through a lump-sum appropriation.

Under the guidance of Lincoln, the court next looks to the statute to see if it circumscribes the BOP's discretion on how to allocate its funding. Lincoln, 113 S.Ct. at 2032.  The authorizing

-12-

statute provides that the BOP "*may* place in a shock incarceration program" qualifying inmates who volunteer.   18 U.S.C. § 4046 (emphasis added).   The word "may" connotes discretion.   See <u>Lopez v. Davis</u>, 121 S.Ct. 714, 722 (2001).   Congress used "shall" in the same section to impose obligations without discretion.   18 U.S.C. § 4046(c) ("An inmate who in the judgment of the Director of the Bureau of Prisons has successfully completed the required period of shock incarceration *shall* remain in the custody of the Bureau for such period . . . as the Bureau deems appropriate" (emphasis added)).   <u>See also</u> <u>Lopez</u>, 121 S.Ct. at 722.   The statute, therefore, does not impose any limits to the BOP's discretion on whether or not to use its funds to operate an ICC Program.   The BOP's cancellation of the ICC Program is thus not substantively reviewable.

Alternatively, even were the BOP's ICC Program cancellation judicially reviewable, the APA notice and comment provisions were not violated.   The APA requires that general notice of a proposed rule making must be published and interested persons must be allowed to comment on the proposed rule making.   5 U.S.C. § 553. Failure to comply with the notice and comment provision of the APA is grounds to invalidate a rule covered by the APA.   <u>National Organization of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs</u>, 260 F.3d 1365, 1375 (Fed. Cir. 2001)(citing <u>Auer v. Robbins</u>, 117 S.Ct. 905, 910 (1997)).   But the notice by publication

requirement does not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice."  5 U.S.C. § 553(b)(A).  General statements of policy are "statements issued by an agency to advise the public prospectively of the manner in which the agency proposes to exercise a discretionary power."   Lincoln, 113 S.Ct. at 2034 (quoting Chrysler Corp. v. Brown, 99 S.Ct. 1705, 1718 n.31 (1979)).

"Whatever else may be considered a 'general statemen[t] of policy,' the term surely includes an announcement like the one before us, that an agency will discontinue a discretionary allocation of unrestricted funds from a lump-sum appropriation." Lincoln, 113 S.Ct. at 2034.  The Supreme Court has stated that "decisions to expend otherwise unrestricted funds are not, without more, subject to the notice-and-comment requirements of § 553. Lincoln, 113 S.Ct. at 2034.  The BOP's cancellation of the program is a general statement of BOP policy.[8]  It involved a budgetary and resource allocation decision to terminate a program that was paid for by unrestricted funds, whose operation was within the discretion of the BOP.  As such, it is exempt from the notice and

---

[8]The fact that the BOP promulgated implementing regulations for the ICC Program does not affect the court's analysis.  The ICC Program was not established and operated by regulation.  Instead, the statute creating the ICC Program was passed in 1990, and the program existed for several years without implementing regulations until the BOP published interim rules in 1996.  18 U.S.C. § 4046; 28 C.F.R. §§ 524.30-524.33.  See also United States v. Mclean, 2005 WL 2371990 at 4 (D. Or. 2005).

comment requirement as a general statement of policy under 5 U.S.C.

§ 553(b)(A) and is not invalid under the APA.

**D.    The Due Process Clause**

Petitioner also argues that eliminating the sentencing benefit

of the ICC Program is a due process deprivation because her

sentence was based on misinformation.  To the extent Petitioner's

due process claim has any validity, it belongs in a § 2255 motion

in the sentencing court.  A challenge "directed toward the sentence

itself ..... [is] cognizable only under 28 U.S.C. § 2255."  United

States v. Gabor, 905 F.2d 76, 78 (5th Cir. 1990).[9]

**E.    The *Ex Post Facto* Clause**

Petitioner's final argument is that cancellation of the ICC

Program violates the *Ex Post Facto* Clause of the Constitution,

which forbids the passing of *ex post facto* laws.  U.S. CONST.

art. I, § 9.  To establish an *ex post facto* violation, petitioner

must establish that the BOP's cancellation of the ICC Program:

(1) punishes as a crime an act previously committed that was not

criminal when committed; (2) makes more burdensome the punishment

for a crime after its commission; or (3) deprives someone charged

---

[9]Although this court will not decide the merits of
petitioner's due process claim because the sentencing court is the
proper forum for her § 2255 sentencing challenge, it is worthwhile
to note that the sentencing court contemplated the possibility that
petitioner would not go through the ICC Program. See Judgment in a
Criminal Case, Case No. SA-05-CR-282(01), p. 2 ("Should the
defendant *not qualify* for the Intensive Confinement Program . . .
.(emphasis added)).

of a crime with a defense available when the act was committed.[10]

Collins v. Youngblood, 110 S.Ct. 2715, 2724 (1990).  The focus of

an *ex post facto* inquiry is on whether the change alters the

definition of a crime or increases the punishment, not on whether

there is some kind of disadvantage to the prisoner or affects his

opportunity to take advantage of an early release program.  See

California Dept. of Corrections v. Morales, 115 S.Ct. 1597, 1602

n.3 (1995).

This court, like the vast majority of other courts addressing

this issue, concludes that petitioner fails to allege an *ex post*

*facto* violation in the BOP's cancellation of the ICC Program.  See,

e.g. Almanza v. Federal Bureau of Prisons, 2006 WL 44072 (S.D. Tex.

2006); Fason v. Sanders, 2005 WL 2897041 (E.D. Ark. 2005); United

States v. McClean, 2005 WL 2371990 (D. Or. 2005).   But see

Castellini v. Lappin, 365 F.Supp.2d 197 (D. Mass. 2005) (finding an

*ex post facto* violation).

Petitioner's *ex post facto* claim rests on the argument that

the BOP's policy change increased punishment for her crime after

its commission.   But the BOP's change in policy merely deprived

---

[10]Petitioner also argues that the BOP's elimination of the ICC
Program impinges on her settled expectations. (Response, p. 4)  She
notes that respondents cannot prove that she would not have
successfully completed the program if given the opportunity.  This
misses the point.  Petitioner had no settled expectations, because
petitioner has not started the ICC Program.  Petitioner had not
even been deemed eligible for the ICC Program, a decision that was
completely within the BOP's discretion.  Moreover, petitioner, not
respondent, bears the burden of proof.

petitioner of the ability to take advantage of a program that, if successfully completed, might entitle her to early release.  In Wottlin v. Fleming, 136 F.3d 1032 (5th Cir. 1998), the Fifth Circuit examined a retroactively applied change in BOP policy that denied early release to prisoners who were convicted of certain violent offenses and found no *ex post facto* violation.  Here, like Wottlin, petitioner's eligibility for the ICC Program has always been subject to the discretion of the BOP.  Wottlin, 136 F.3d at 1037.  The BOP's cancellation of the ICC Program did not change the punishment for the crime that petitioner had committed.  Petitioner was never entitled to participate in the ICC Program.  In fact, as discussed above, the BOP was not even required to run the ICC Program.  18 U.S.C. § 4046.  See also Alexander v. Wendt, 127 Fed. Appx. 695 (5th Cir. Apr. 1, 2005) (finding no *ex post facto* violation where a BOP determination "merely deprived [the petitioner] of an opportunity to take advantage of a discretionary early-release provision"); Fifth Circuit Rule 47-5.4.  The BOP's exercise of its discretion to cancel a program that it was not required to operate, which deprived petitioner of the opportunity to participate in a program under which the BOP had complete discretion to determine her eligibility, does not constitute an *ex post fact* violation.

## III.  CONCLUSION

For the reasons discussed above, petitioner is not entitled to federal habeas corpus relief under 28 U.S.C. § 2241.  The court orders as follows:

1.   The petition for Writ of Habeas Corpus (Docket Entry No. 1) is **DENIED.**

2.   Petitioner's Request for Admissions (Docket Entry No. 6) is **DENIED.**

3.   Petitioner's Motion for a Temporary Restraining Order (Docket Entry No. 8) is **DENIED.**

4.   Petitioner's Motion for an Evidentiary Hearing (Docket Entry No. 9) is **DENIED.**

5.   Petitioner's Motion to Compel (Docket Entry No. 10) is **DENIED.**

6.   Respondent's Motion to Dismiss (Docket Entry No. 5) is **GRANTED.**

**SIGNED** at Houston, Texas, on this the 9th day of March, 2006.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE